UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE JAVIER CUY COMES,

                      Petitioner,

-against-

FRANCIS DELEON, in his official capacity as Acting Assistant Field Office Director for the Newark Field Office for Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; PAMELA BONDI, in her official capacity as Attorney General of the United States of America,

                      Respondents.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _11/14/2025_

25 Civ. 9283 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, Jose Javier Cuy Comes, a citizen of Guatemala, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). *See generally* Pet. (the "Petition"), ECF No. 1; Johnson Decl. ¶ 3, ECF No. 12. Cuy Comes contends that his Fifth Amendment right to due process was violated when he was detained on November 4, 2025, after being approached on the sidewalk outside his home in Queens, New York. *See* Pet. ¶ 1. Cuy Comes seeks immediate release from custody. *Id.* ¶ 3. For the reasons stated below, the Petition is GRANTED.[1]

## BACKGROUND

Cuy Comes is a resident of Queens, New York, and has lived in the United States continuously for at least five years. *Id.* ¶ 4. On November 4, 2025, as Cuy Comes was walking

---

[1] Having reviewed the Petition, the materials filed in support thereof, and Respondents' opposition and accompanying declaration and exhibits, the Court finds that the Petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. *See* 28 U.S.C. § 2243 (commanding courts to dispose of habeas petitions expeditiously, "as law and justice require").

from his home to work, he was stopped in front of his house by immigration agents, who asked for his name and identification. *Id.* ¶ 14. After he stated that he had a photo of an identification on his phone, an ICE agent demanded that he hand over his phone. *Id.* After he refused to hand over his phone, over half a dozen agents told him he would be detained if he did not hand them his phone. *Id.* He was then handcuffed and detained. *Id*. During his arrest processing, Cuy Comes was served with a Form I-200 Warrant of Arrest and a Notice to Appear initiating removal proceedings. Johnson Decl. ¶ 4. Prior to this interaction and subsequent detention, Cuy Comes had no contact with immigration authorities in the United States. *Id.* ¶ 9. Cuy Comes is currently detained at Delaney Hall Detention Facility located in Newark, New Jersey, a facility used by the ICE New York Field Office. *Id.* ¶ 7.

On November 6, 2025, Cuy Comes filed a counseled habeas petition initiating this action. *See generally* Pet.[2] On November 12, Respondents filed their response. *See generally* Resp., ECF No. 10; Opp. Mem. ECF No. 11; *see also* Johnson Decl. On November 13, Cuy Comes filed his reply. Reply, ECF No. 13.

## DISCUSSION

"Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quotation omitted). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* In analyzing Cuy

---

[2] Although the Petition concerns urgent claims and requests immediate relief, it was not filed as an application for emergency relief pursuant to Rules 13.18 and 13.19 of the United States District Court for the Southern District of New York's ECF Rules and Instructions, and it was not labeled as an emergency habeas petition. Accordingly, the case was wheeled out in the ordinary course, and the case designation to the undersigned was not entered until November 7, 2025. *See* Pet.

2

Comes' procedural due process claim,[3] the Court holds that (1) Cuy Comes, a noncitizen who has resided continuously in the United States since 2020, is subject to detention under 8 U.S.C. § 1226(a), not—as Respondents contend—under 8 U.S.C. § 1225(b)(2)(A); and (2) because he is subject to detention under § 1226(a), his due process rights were violated when ICE detained him without an individualized determination of his dangerousness or flight risk.

I. Basis of Detention

Respondents seek to justify Cuy Comes's detention under 8 U.S.C. § 1225(b)(2)(A), which provides for mandatory detention of certain noncitizens. Opp. Mem. at 4–11. Section 1225(b)(2)(A), and the uniform case law interpreting it, compels the Court to hold that § 1225(b)(2)(A) does not apply to Cuy Comes, who has been continuously present in the United States for at least five years. *See, e.g.*, *Hyppolite v. Noem*, No. 25 Civ. 4304, 2025 WL 2829511, at *7–8 (E.D.N.Y. Oct. 6, 2025) ("[A] noncitizen who has resided continuously in the United States since . . . 2022 . . . is subject to the discretionary provisions of § 1226(a), not the "mandatory" provisions of § 1225(b) as Respondents claim."); *Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025) (holding that § 1225(b)(2) does not apply to a noncitizen who "has been residing in the United States for more than two years at the time of his arrest and detention").

The Supreme Court has stated that, although § 1225(b)(2)(A) applies to a noncitizen who is an "applicant for admission" and is "seeking admission" into the country, noncitizens who are "already in the country pending the outcome of removal proceedings" are not subject to its mandatory detention provisions. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Those

---

[3] Because the Court holds that Cuy Comes should be released because his detention violates the Fifth Amendment, the Court need not decide Cuy Comes' other claims, including whether his stop and seizure violated the Fourth Amendment. *See* Pet. ¶¶ 58–74.

3

noncitizens are, instead, subject to discretionary detention under § 1226. *Id.* at 288–89; *see id.* at 288 (observing that § 1226(a) governs the removal of noncitizens "once [they are] inside the United States"); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (explaining that § 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal").

This interpretation stems from the statutory text. As many other courts have observed, Respondents' reading of § 1225(b)(2)(A)'s mandatory detention provision to apply to all inadmissible noncitizens present in the United States would render its text, which applies on its face only to certain noncitizens "seeking admission," useless surplusage. *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025); *see also Lopez Benitez*, 2025 WL 2371588, at *5–8; *Hyppolite*, 2025 WL 2829511, at *9; *Artiga v. Genalo*, No. 25 Civ. 5208, 2025 WL 2829434, at *7 (E.D.N.Y. Oct. 5, 2025). If "the mandatory detention provision in § 1225(b)(2) applied to *all* noncitizens who are 'applicants for admission,' then there would be no need for Congress to have separately referenced a sub-category of persons 'seeking admission' in the specific section that relates to mandatory detention." *Hyppolite*, 2025 WL 2829511, at *9.

In addition, Respondents' "interpretation of § 1225(b)(2) would . . . render a recent amendment to Section 1226 superfluous. Section 1226(c)(1)(E) . . . makes a noncitizen subject to mandatory detention if he is (i) inadmissible under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7) (the 'inadmissibility criterion'); '*and*' (ii) is charged with, arrested for, convicted of, or admits to committing certain crimes (the 'criminal conduct criterion')." *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *6 (D. Mass. July 7, 2025) (emphasis in original) (quoting 8 U.S.C. § 1226(c)(1)(E)). The provision thus provides that detention is mandatory only when both the inadmissibility *and* criminal conduct criteria are satisfied, and accordingly, § 1226(c)(1)(E)

4

would be meaningless if Congress had already intended to render all inadmissible noncitizens subject to detention under § 1225(b)(2)(A). *Id.*; *see also Lopez-Campos v. Raycraft*, 25 Civ. 12486, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025) ("If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless . . . ." (internal quotation omitted)). Accordingly, it is not plausible to read §§ 1225 and 1226 to require that any inadmissible noncitizen be automatically subject to mandatory detention.

The Court's interpretation of the provisions is also supported by the statutory structure and § 1255's focus on "borders and ports of entry." *Jennings*, 583 U.S. at 287; *see Hyppolite*, 2025 WL 2829511, at *9 (describing § 1225(b)(2)(A)'s references to provisions about crewmen and stowaways and special procedures for those arriving on land). In reading "the words [of the statute] in their context and with a view to their place in the overall statutory scheme," *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal quotations omitted), the Court is persuaded that the "applicants for admission covered by § 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering—not those in [Cuy Comes'] circumstances," *Hyppolite*, 2025 WL 2829511, at *9.

The Court's position is also in accordance with "[t]he distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered [that] runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).[4] To be sure, there are threshold cases—for instance, when someone has "just crossed the border"—where someone

---

[4] The Court's interpretation also appears to be consistent with DHS's longstanding practice that § 1226(a) applies to those, like Cuy Comes, who had already entered the United States when they were arrested and detained. *See Martinez*, 792 F. Supp. 3d, at 217 n.9 (D. Mass. July 24, 2025) (noting the Solicitor General's representation in oral argument in *Biden v. Texas*, 597 U.S. 785 (2022) that "DHS's long-standing interpretation has been that § 1226(a) applies to those have crossed the border between ports of entry").

5

"may technically be 'in' the country but is still treated as 'an alien seeking initial entry.'" *Lopez Benitez*, 2025 WL 2371588, at *4 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 114, 139 (2020)).  But this is not such a case.  Cuy Comes has been continuously living in the United States for at least five years and was arrested near his home, far from the border.  Pet. ¶ 4.  Because Cuy Comes is not an arriving noncitizen and entered the United States long ago, the Court holds that he is no longer subject to detention under § 1225 and is instead subject to detention only on a discretionary basis under § 1226.  *See also Lopez Benitez*, 2025 WL 2371588, at *4 (holding that because the provisions are mutually exclusive, "a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226").

As a separate ground for the Court's conclusion, § 1226(a) governs when a warrant is issued by the Attorney General and an individual is detained pending removal proceedings.  *See* Repl. 4.  Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States," "[e]xcept as provided in subsection(c)." (emphasis added).  The plain meaning of this provision is that whenever an administrative warrant is issued, detention is discretionary, subject to only one exception inapplicable here.  The single "express exception" to discretionary detention on a warrant issued by the Attorney General "implies that there are no *other* circumstances under which" detention is mandated for noncitizens detained pursuant to an administrative warrant.  *Jennings*, 583 U.S. at 300 (citing A. Scalia & B. Garner, Reading Law 107 (2012)); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (noting that when Congress has created "specific exceptions" to a statute's applicability, that "proves" that the statute applies "across the board" absent those exceptions).  Because Cuy Comes was arrested and detained pending removal proceedings

6

pursuant to an administrative warrant, *see* Warrant, ECF No. 10-2, and he does not fall into the single exception for mandatory detention under § 1226(c), Cuy Comes's detention must be discretionary. *See* Opp. Mem. 1 ("ICE served Petition with a warrant of arrest and detained him. . . . On the same day, ICE also served Petitioner with a Notice to Appear.").

For all these reasons, the Court holds that the discretionary detention provision in § 1226(a), not the mandatory detention provision in § 1225(b)(2)(A), applies to Cuy Comes.

II.     Due Process

At the outset, the Court rejects Respondents' assertion that Cuy Comes is not entitled to due process under the Fifth Amendment and is instead limited only to the process provided by Congress. *See* Opp. Mem. at 14. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citation omitted); *Velasco Lopez*, 978 F.3d at 850.

"The Second Circuit has held that the *Mathews v. Eldridge*[, 424 U.S. 319 (1976),] balancing test applies when determining the adequacy of process in the context of civil immigration confinement." *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025) (citing *Velasco Lopez*, 978 F.3d at 851). "The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* (citing *Mathews*, 424 U.S. at 335).

First, as to the private interest, Cuy Comes' detention invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d

7

at 851.  Cuy Comes does not contend that greater "'judicial-type procedures must be imposed upon [the] administrative action[s]' of ICE than those already required by law; []he argues that the agency is obligated to comply with the procedures already in place, and its failure to do so amounts to a complete and arbitrary denial of due process."  *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (quoting *Velasco Decker*, 978 F.3d at 851).  Under § 1226(a), Cuy Comes argues—and Respondents do not dispute, *see* Opp. Mem. at 20—that ICE must make an individualized determination as to whether a noncitizen "pose[s] a danger to property or persons," or is unlikely "to appear for any future proceeding."  8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8); *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see also Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020) ("8 U.S.C. § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination."); *Lopez Benitez*, 2025 WL 2371588, at *10.  If, after such an individualized consideration, ICE chooses to detain the noncitizen pursuant to § 1226(a) pending removal proceedings, then the individual may ask for a bond redetermination hearing before the immigration judge.  *See* 8 C.F.R. § 1003.19.  "Reading § 1226(a) as requiring an initial detention decision by DHS is the only way to make sense of the broader statutory and regulatory scheme, which provides an opportunity to appeal a detention decision to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors."  *Lopez Benitez*, 2025 WL 2371588, at *10.

It is undisputed that no such individualized determination was made here.  *See generally* Opp. Mem.  Instead, Cuy Comes was immediately detained after being stopped by immigration agents in front of his house.  Pet. ¶ 14.  Cuy Comes alleges that his arrest and detention were made pursuant to an ICE "operation of indiscriminate stops of Hispanic people in the Corona,

Queens neighborhood," without an individualized assessment as to whether detention was warranted for each potential detainee. Pet. ¶ 15.

As in *Chipantiza-Sisalema v. Francis*, 2025 WL 1927931, *Kelly v. Almodovar*, No. 25 Civ. 6448, 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025), and *Gonzalez v. Joyce*, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025), Respondents also do not contend that ICE gave Cuy Comes either notice or an opportunity to be heard on his detention prior to being detained. *See generally* Opp. Mem. Neither do Respondents argue that anyone made any determination that Cuy Comes poses a risk of flight or a danger to the community before detaining him. *See id.* at 22 (maintaining that a custody determination based on Petitioner's dangerousness and flight risk was not required).

The undisputed facts are, therefore, that ICE summarily detained Cuy Comes without making an individualized determination as to his risk of flight or his danger to the community, let alone affording him notice or opportunity to be heard. There is no valid exercise of DHS's discretion consistent with due process where "there is nothing to suggest that DHS exercised any discretion *at all* in detaining [Cuy Comes] . . . . in contravention of the basic procedural requirements of § 1226(a)." *Lopez Benitez*, 2025 WL 2371588, at *11 (emphasis in the original). And there is no dispute that ICE is required to adhere to the basic principles of due process when exercising its discretion under § 1226(a). *Velasco Lopez*, 978 F.3d at 850–51.

In these circumstances, the risk of erroneous deprivation is significant. "The purpose of requiring an exercise of discretion prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty. This purpose is illustrated clearly here, as . . . there is no evidence in the record suggesting that [Cuy Comes] is a flight risk or a danger to his community." *Lopez Benitez*, 2025 WL 2371588, at *12. Moreover,

9

the government's interest in Cuy Comes's ongoing detention is minimal, as its discretion to detain individuals under § 1226 is only valid "where it advances a legitimate governmental purpose," such as "'ensuring the appearance of [noncitizens] at future immigration proceedings' and 'preventing danger to the community.'" *Valdez*, 2025 WL 1707737, at *4 (quoting *Zadvydas*, 533 U.S. at 690). "Where the noncitizen poses no danger and is not a flight risk, all the government does in requiring detention is 'separate[] families and remove[] from the community breadwinners, caregivers, parents, siblings, and employees." *Black v. Decker*, 103 F.4th 133, 154 (2d Cir. 2024) (quoting *Velasco Lopez*, 978 F.3d at 854–55). Therefore, the governmental interest involved in Cuy Comes's continued detention without an individualized assessment does not carry the weight of the *Mathews* factors. "In light of the deprivation of [his] liberty . . . the absence of any deliberative process prior to, or contemporaneous with, the deprivation, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only vehicle for relief. It is, in essence, the most appropriate remedy." *Lopez v. Sessions*, No. 18 Civ. 4189, 2018 WL 2932726, at *15 (S.D.N.Y. June 12, 2018).

III. Exhaustion

Respondents contend that even if Cuy Comes were subject to § 1226(a), the Court should deny the writ of habeas corpus because he has not exhausted his administrative remedies. Opp. Mem. at 17–23. This argument also fails. Although "[t]here is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention [in federal court]," *Araujo Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014), as a "prudential matter," district courts have required "administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus," *Quintanilla v. Decker*, No. 21 Civ. 417, 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021)

(quoting *Joseph v. Decker*, No. 18 Civ. 2640, 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)). Exhaustion may be excused when certain exceptions apply, including when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)). The Court holds that Cuy Comes is excused from administrative exhaustion because he has no genuine opportunity for adequate relief, and he has raised a substantial constitutional question regarding the procedures used to detain him. *See id.*

Respondents' suggestion that any constitutional violation could be cured if Cuy Comes requested a custody re-determination hearing before an immigration judge does not hold water. Such a hearing occurs *after* ICE makes its initial decision to detain. 8 C.F.R. § 236.1(d); *see Chipantiza-Sisalema*, 2025 WL 1927931, at *3. Accordingly, such a hearing is an inadequate substitute for the requirement that ICE engage in a "deliberative process prior to, or contemporaneous with," the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause. *Lopez*, 2018 WL 2932726, at *15; *see Zadvydas*, 533 U.S. at 690. "[G]iven the nature of the constitutional violation [Cuy Comes] sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment *before* detaining him— any post-deprivation review by an immigration judge would be inadequate." *Lopez Benitez*, 2025 WL 2371588, at *14. "The suggestion that government agents may sweep up any person they wish . . . so long as the person will, at some point unknown in time, be allowed to ask some other official for his or her release offends the ordered system of liberty that is the pillar of the

11

Fifth Amendment." *Chipantiza-Sisalema*, 2025 WL 1927931, at *3–4 (citation omitted).[5] Respondents' suggestion that Cuy Comes has an adequate remedy available to him thus rings hollow, and exhaustion is excused here.

Moreover, courts may excuse administrative exhaustion where the petitioner "has raised a substantial constitutional question." *Beharry*, 329 F.3d at 62 (quoting *Able*, 88 F.3d at 1288). Cuy Comes has done so here by challenging the constitutionality of his detention procedures as violative of his due process rights. *See Valdez*, 2025 WL 1707737, at *1 n.1; *Chipantiza-Sisalema*, 2025 WL 1927931, at *3; *Lopez Benitez*, 2025 WL 2371588, at *14.

## CONCLUSION

For the reasons stated above, the Petition, ECF No. 1, is GRANTED. Respondents are ORDERED to immediately release Cuy Comes from custody.

By **November 15, 2025, at 12:00 p.m.**, Respondents shall certify compliance with this Order by a filing on the docket.

SO ORDERED.

Dated: November 14, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[5] According to the Notice to Appear, Cuy Comes' first appearance before an immigration judge is scheduled for December 4, 2025, a full month after his initial detention. *See* Notice to Appear, ECF No. 10-3 at 1. Nothing in the record indicates that Cuy Comes has been offered an earlier opportunity to challenge his custody determination.